Court will proceed to the fifth case, the United States v. Armenta. Mr. Turner. Good morning. My name is Philip Turner. I'm appointed counsel for Ms. Armenta on this appeal. May it please the court, counsel. I know the court has had an opportunity to review all the briefs and look at all the cases. When you look at this case overall, what it boils down to is it's a due process violation. When you have not one witness and no evidence that basically links the defendant to the statements and actions that are attributed to this person. Doesn't the stated exhibit summarizing Mrs. Armenta's employment with passages essentially resolve any doubts on the issue of identity? No. No, it doesn't. Here's why. Because there are, it goes to the heart of the issue is there are statements and actions that are attributed to the person. Now, just because someone supposedly worked there does not mean that someone who says a name in a courtroom that that links or provides a rational link to the person sitting in the courtroom was actually Angela Armenta. That's why, as I said in my reply brief, in every direct examination, every direct examination in any criminal case. And I have to say, as I recall, when I was an assistant United States attorney, the fundamentals were that you asked to witness their name, where they work. And then at some point early on, you'd say, do you know, for example, a person by the name of Philip A. Turner? Yes, I do. Can you point out a piece of clothing or something he's wearing or where he's seated? And then the witness does, and the request is made of the trial court to ask that the record reflect the identification of the person. And what that does is it provides a reliable basis right there, a rational basis right there that what's attributed to this person. And I think. Mr. Turner. Yes. She's still committed to the authenticity of that exhibit. Yes. And thus to her employment with passages. Yes. Once her employment with passages was established, the odds that the witnesses might have been discussing a different Angela Armenta, in my mind, essentially dropped to zero. Well, here's why I go to answer that question and go to that. They're discussing someone, but you don't know and you don't have any rational basis for saying that who they're ascribing an action to is actually this person. Yes, she worked there. But that doesn't mean, for example, that just because, for example, if I say that Judge Flom said something and I'm thinking of Judge Flom and I mischaracterize the name, and I'm really talking about somebody else or something like that. And what made this situation even more difficult is the fact, as I point out in the briefs, is that the evidentiary foundations were relaxed for the government. As I pointed out in my briefs, and if you look at the transcript where objections were made, where basic foundation requirements were waived because the government could not do them. And what that meant is that there was no identity. The things that are fundamental in foundations were lacking. That is time, place, who was present when it occurred. So you have these general amalgamation of things that occurred. And the whole basis of this, of due process, is to promote reliability. I think there's sort of somewhat analogous here to the whole issue of identification in general with photo spreads and all of these things. The whole idea of why there's a due process issue there is because we don't want misidentification. And here, as the district court pointed out, said the government could have easily done this. The government didn't, and it didn't do it with any witness. So this raises that fundamental due process issue that's present in confessions, that's present in a witness identification of reliability. And the fact that witnesses referred to Armenta and to the defendant interchangeably, you don't think one of them would have said, but that isn't her sitting there? It's not a matter of what they don't say. It's a matter of what they do say, because that goes to another fundamental principle of our Constitution and our law. The government, the prosecution, has the burden of affirmatively proving something. Not for someone to not say something or for the defense to point out something, but it's the government's burden to do that. And that's why there's this fallback position of, well, even though the government didn't do what it should have done, or I guess we assume could have done, well, then we should look around and find something else to basically pull this thing out of the fire. It's a basic reliability. That's what all of these rules are for. And I use the example of the rules of evidence because the rules of evidence are to make it so that reliable, rational information gets to the trier of fact. Because we all know that juries are composed of laypeople. And the way that generally people make their decisions in life is not the way that the rules of evidence require one to make decisions. The rules of evidence are designed to rule out things that are unreliable. And that's why when these foundations are not met, in the context of this case, that- It really- there were stipulations, were there not? There was one, and that's what Judge Rovner is focusing on. Oh, no, there were more than one. There were multiple stipulations, including a resume that listed employment passages from 2008 to 2012, including a position as CNA director. You know, I mean- That is what I'm talking about. Right, that's what I understood you to mean. And, of course, we're in this position of going back to something like that, of course, because- Well, it's certainly not the best, but- Oh, it's not. But it's not- either it's not- there's no chance that it improperly identified the defendant, in my view, from this- See, but I go to a more fundamental matter in the matter, and that is when you're attributing statements and actions to someone, and you don't even identify who that person is. Now, if you want to jump and say because someone works someplace and someone says their name, that that means that automatically that whatever action someone says is attributed to that name or statements to that name, then I think that there's a gap there, and it lacks reliability, and that is what due process is all about. And that's why in photo spreads, lineups, confessions, that's why that issue of reliability- and this is not some situation where the-I want to reserve some of my time- where the defendant is asking for something impossible. This is very simple. Very simple. If the government could have done it, and they didn't do it, and the line has to be drawn. Now, I know there are these cases, and you look at Weed and the various cases, and it's caused courts to struggle, and the courts generally look for something to say, well, the defendant didn't do this, the defendant didn't do that, the defendant didn't do this, and things like that. But that's the wrong focus. The focus has to be, as our Constitution and our law requires, on the government doing its job. And when it doesn't, the courts should not try to look to help them out, not at all, or to sustain a conviction. I want to reserve the remainder of my time for rebuttal. Thank you. Mr. Lee. May it please the Court. My name is Stephen Lee on behalf of the United States. As the District Court correctly concluded here, there was sufficient evidence in the record overall for the jury to conclude that the defendant, Andrew Amenta, was the same Andrew Amenta who had been the subject of stipulations, testimony, and other evidence that was presented during the government's case in chief. Was there just an oversight here? What happened here? Your Honor, it's not in the record as to... Yes, obviously the government did not elicit an in-person, in-court identification from any witness. It was obviously, I think it's fair to say, it's obviously an oversight on the government's behalf. And beyond that, it's not on the record as to exactly what may or may not have been in the prosecutor's slots at the time. Mr. Lee, how many witnesses did the government present in this case? The government presented multiple witnesses. I believe there were at least ten former employees of Passages, I believe, who had some interaction.  Yes, Your Honor. There were people who worked... The defendant was the director of certified nursing assistants. One of the witnesses was her partner as the director of the nurses in the same region. There were multiple nurses who reported in an indirect way to the defendant. There was a social worker who testified about how she was instructed by the defendant to help alter patient files. There were other administrative people at the company who testified about their interactions with the defendant. So multiple people testified about Angela Menta and were asked questions specifically about Angela Menta. And two of those people were asked questions specifically about, quote, the defendant. There were some questions by the government, but there were also written questions submitted by the jurors themselves, asking two witnesses in particular, specifically questions such as, were you subordinate to the defendant? And none of these witnesses asked for clarification or expressed any confusion. They answered those questions just the same as they had been answering all the questions that had been asked specifically about Angela Menta. So that testimony, along with the reasonable inferences that one can draw from it, supports the identification of Angela Menta, the defendant, as the same Angela Menta. Judge Durkin has a practice of preventing jurors to submit questions or submit written questions. I believe, Mike, this case was the first criminal case he had done that with. But, yes, I believe that has become a practice in his court where in criminal cases, if the parties don't object, he will allow the jurors to submit written questions that the parties can review before they are asked. So there is a way, a check, to make sure that improper questions don't get asked. But there was a way to see that the jurors, they obviously, some of them did make the inference already that the defendant, Angela Menta, was the same Angela Menta. And they asked questions in that regard. As two of the judges have already mentioned, there was the CV that was omitted showing, talking about Angela Menta's work at Passages, that was omitted pursuant to a stipulation between the government and, quote, the defendant, Angela Menta. So all of this... The stipulation was as to what? There was a stipulation to the authenticity of the CV of Angela Menta, the portions of which specifically related to Passages. Well, that just simply says she held a certain position, right? And it went through some of the duties that she had consistent with the testimony. Now, during the course of the trial, was there any cross-examination where the defense lawyer made reference to the defendant in specifically, and will the record show this is what I'm asking, Mr. Lee, where in cross-examining a government witness, a fair reference could be drawn that they're speaking about the defendant who is in court? Defense counsel, I don't believe that he actually used the words the defendant when asking questions during cross-examination. He did refer to Angela Menta as the defendant in his opening statement. So from the beginning, he said that he represented Angela Menta, the defendant in this case. So overall, the issue of identity was not an issue that seemed to be of much significance in this case. The government obviously did not elicit an in-person identification, in-court identification. Obviously, in hindsight, it would have been better for the government to have done so. But the overall record and the reasonable inferences that could have been drawn from that record supported the conclusion that the defendant, Angela Menta, was the same Angela Menta whom the case was about. Was she introduced by any chance by defense attorney, you know, saying at counsel table is so-and-so and so-and-so? Yes, Your Honor. He said that he represented, quote, Ms. Menta, Angela Menta, the defendant in this case. And then later he referred to, quote, Angela here, and then he described her duties at passages. He also said later on in this opening statement. Angela here. Yes. Now, obviously, the record doesn't show, reflect exactly if he was pointing at the time. But I think given this context, I think it's pretty reasonable he was referring to the defendant who was sitting with him at counsel table. He also said at one point in terms of that he did acknowledge that his client. Was she the only woman at counsel table? Yes, Your Honor. I believe that, I don't know if the record reflects this, but I believe that defense counsel, it was just defense counsel and his client. I don't think he had any assistance with him at counsel table during the trial or during opening statements. And he also acknowledged during opening statements that his client, quote, was there, obviously, close quote, with regard to some of the incidents that came up during the trial, such as the alteration of patient files that had been requested by an audit. So overall, again, given the overall record, and given the lack of there appearing to be an issue as to identity throughout most of the case, the record was more than sufficient for the jury to conclude that the defendant or trial mentor was the person who had been the subject of the testimony and evidence. Unless the court has any further questions, the government asks you to affirm the conviction and the sentence in this case. I would say, Judge Rovner, that when you said what happened here, that is exactly the due process concern. There's no reason for it. And very respectfully, obviously, I've been in government counsel's position for a lot of time, and I know that you have too. There's no excuse. There's no reason. And that illustrates the due process concern. And more than this, it presents kind of an unease. And the reason there's that unease is because of that due process concern. And that's what due process, in all these cases, Neal versus Biggers, the lineup cases, the confession cases, it's because of that unease. Counsel, let me ask you this. Yes, Judge. I assume she entered a plea and she appeared initially. No identification in those prior to the trial itself? There would have been self-identification because she would have testified under oath in a Rule 11 colloquy against herself. So there would be identification. And, you know, Judge, I tried to hypothesize cases of where you have, because one of the cases it mentioned, you know, because sometimes there may not be any witnesses who can identify a person. You know, I tried to hypothesize cases like that, where maybe it's someone robs a bank. Oh, I'm out of time. No, no. You may have an additional two minutes. Okay. Someone robs a bank, and the only thing they leave is, say, DNA. That's it. And then we're able to somehow match that DNA, which you have a database of it, and you match the DNA. But even there, and I was hypothesizing because I always hold up all the things that I think to the light. Even there, you have someone who says, I took Philip Turner's blood, in essence. I tested that blood, and his DNA is so-and-so. Do you see Philip Turner in the courtroom who you took that blood from? Yes, I see him right there with the odd tie on and the blue suit. The man sitting right there next to the defense counsel. You make it irrational. We can't go down this road of doing this, because otherwise it's a very, very troublesome road. Mr. Turner, let me ask you this. If in this work setting we had two Mrs. Armentas, or let's say three Ms. Jones or whatever, then I think we would have some pretty serious concerns about a miscarriage of justice potential. A due process? Yes. But can we say that's what we have here? I mean, do we have the kind of unease that we might have if the defendant was one of maybe three people that could have been possibly involved in this matter? The problem, yes, because obviously she had a sister working there, and she was always in tandem with the regional director of nursing. And there's a lot of conversation going on by a lot of different people. This isn't a situation like weed where you've got two agents on one person. That's why it's different. It doesn't give you that unease. But there's a lot of people involved here, a lot of them. And so people are saying things and various things. And then, as I say, over that you have the fact that, and I objected and Judge Durkin said no, that you needed a better foundation on that. And that's the whole purpose of that is to try to make that reliable. But that's why we have that exact concern because there are a lot of people, a lot of people there, a lot in the situations, a lot of people saying all kinds of things. And without the witness saying, making that connection of some sort, you have a gap, and you always have that gap. Whereas in the situation I hypothesized, even if the DNA is left, well, the DNA is matched up and someone says, yeah, that's the fellow right there whose blood I took, and this is his DNA, and then you've got the match. But you've got that there's no gap, and that's the problem. There were a lot of people there. Her sister's working there. She's always with these other people. And so statements are attributed to various people. Did her sister have the same last name, do you know? I don't think she did. I don't think she did, but I believe they look very similar. And she's always with these other people. And that's what presents that due process concern. And as I say, it's analogous to the lineup cases in all these. If we looked at the entry of the plea in this case, the not guilty plea, would we find her identifying herself? I think at the arraignment. Probably depends on the judge. Right, right. Just arraignment. I don't know if you'd find somebody there, because I did a lot of talking. My point is it would be likely, although we don't know that, likely there might be identification there. There might be something there. But, you see, this is not where the defense is asking for some kind of crazy things. Because, obviously, sometimes defense lawyers will say, well, they should have done this. They should have had a rocket ship that looked at this and that, and they didn't have that. This is a very, very, very simple thing. Very simple. To make sure that we don't make a mistake. To make sure and to avoid that kind of lack of reliability. Very simple. Not asking for some special kind of test with a polarimeter or something like that. Very, very simple. And I think, unfortunately, counsel dodged it. They didn't do it. And they had multiple opportunities. And then, even after the Rule 29 motion, some of the case law indicates that they could have asked to reopen their case for that purpose. Now, it's within the judge's discretion, but I'm sure the judge would have allowed them to reopen the case for the purpose of identifying the defendant. But they didn't do that. Not at all. Okay. I'll sit down. Thank you. Do you want another trial? What I want in ‑‑ I stand on the brief on the other arguments that I have. What I want is a remand for entry of verdicts of not guilty on these counts. And then on the alternative, I have a sentencing argument, which I didn't get time to present, but I'll just stand on the brief on that. That's what I want. Thank you. But it's well taken care of in the brief. What I want? The sentencing argument is well taken care of in the brief. Well, I think so. I hope you think so. Thank you very much. Thank you, Mr. Turner. Thank you, Mr. Lee. Mr. Turner, you have the additional thanks of the court for accepting this appointment and ably representing the defendant. The case is taken under advisement.